FILED

2016 Aug-22  PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

WAYNE RECLA,                          )
                                      )
              Plaintiff,              )
                                      )
vs.                                   )          Case No. 4:15-cv-504-TMP
                                      )
CAROLYN W. COLVIN, Acting             )
Commissioner of Social Security,      )
                                      )
              Defendant.              )
                                      )

**MEMORANDUM OPINION**

## I.      Introduction

The plaintiff, Wayne Recla, appeals from the partially favorable decision of

the Commissioner of the Social Security Administration ("Commissioner").    This

is his second application for disability benefits.[1]    In this application, the plaintiff

challenges the ALJ's finding that he was not disabled until June 12, 2012, when his

age made him eligible for benefits under the "Grid Rules."   Mr. Recla timely

---

[1]       His first application was denied by an ALJ on June 11, 2011.   The Appeals Council
denied his request for review on August 29, 2012.   He appealed to the district court, which
affirmed on March 20, 2014.   Recla v. Commissioner, Case No. 4:12-cv-3732-RDP-HGD.   The
Eleventh Circuit Court of Appeals on February 10, 2015, affirmed the Commissioner's decision
that Mr. Recla was not disabled through January 11, 2011.   Recla v. Commissioner, 594 Fed.
Appx. 592.   Mr. Recla filed his second application, which resulted in a decision that he was
disabled as of June 12, 2012.   He asserts, however, that his onset date should have been
January 12, 2011.   Accordingly, the only issue before this court is whether the ALJ decision
regarding the onset date is due to be affirmed.

pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).   The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).   Accordingly, the court enters this memorandum opinion.

Mr. Recla was 49 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. (Tr. at 48).   His past work experience is as a painter, automobile mechanic, and car detailer.   (Tr. at 47).   Mr. Recla claims that he became disabled on January 12, 2011, and asserts that he is disabled due to:   severe lower back pain, severe mid-back pain, severe neck pain, severe left shoulder pain, severe foot pain, severe hip pain, severe left ankle pain, bursitis, lupus, bone disease, osteoarthritis, fibromyalgia, myofascial pain syndrome, undifferentiated connective tissue disease, obesity, arthralgia, chronic pain syndrome, edema, hypertension, chest pain with shortness of breath, severe depression with generalized anxiety disorder and panic disorder, low average intelligence, and blurry vision.   (Doc. 12, p. 2; tr. at 132).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.   *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

The first step requires a determination of whether the claimant is "doing substantial gainful activity."   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.   *Id*.   The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).   If the claimant's impairments are not severe, the analysis stops.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.*   If he or she does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.   20 C.F.R. §§ 404.1520(e), 416.920(e).   Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his or her impairments.   20 C.F.R.   § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.   *Id.*   If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.*   Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.   *Id.*   The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Recla was not under a disability within the meaning of the Social Security Act prior to June 12, 2012, but that he became disabled when his age category changed on that date. (Tr. at 49).   She determined that Mr. Recla has not engaged in substantial gainful activity since the alleged onset of his disability.   (Tr. at 17).   According to the ALJ, claimant's obesity, degenerative joint disease of the lumbar spine, degenerative joint

disease of the cervical spine, post-surgical residual of shoulder surgery; fibromyalgia, affective disorder, anxiety disorder, left ankle degenerative changes, and personality disorder are considered "severe" based on the requirements set forth in the regulations.  (*Id.*)  She further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. at 40).    The ALJ did not find Mr. Recla's allegations to be credible (Tr. at 27, 42, 46), and she determined that the claimant, since January 12, 2011, had the residual functional capacity to perform a range of sedentary work. (Tr. at 41).   The ALJ further found that the claimant should be subject to exertional limitations of sedentary work with a sit/stand option at will; no kneeling, no crawling, no crouching, occasional stooping, no climbing ladders, ropes or scaffolds; no work around hazards, and the need for a cane to get to and from the worksite.   (Tr. at 44).    The ALJ also imposed the following nonexertional limitations: that he be given simple, routine, repetitive tasks, with only occasional interaction with others.   (Tr. at 45).

According to the ALJ, Mr. Recla was unable to perform any of his past relevant work; and, prior to June 12, 2012, he was a "younger individual age 45-49." (Tr. at 37).  The ALJ further found that, prior to June 12, 2012, jobs existed in significant numbers in the national economy that the claimant could have

performed.  (Tr. at 48).  The ALJ  found that there were a significant number of jobs in the national economy that the plaintiff, as a "younger individual," was capable of performing, but that when he became a member of the older age category, a finding of "disabled" was applicable to him by direct application of Medical-Vocational Rule 201.14.[2]  (Tr. at 49).  It is the ALJ's finding that, during the 17-month period at issue, Mr. Recla was able to do sedentary work, with restrictions, that is at issue here.

## II.      Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.   The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.

---

[2]      Under the Medical-Vocational Guidelines at Appendix 2 to Subpart P of Part 404, Rule 201.14 prescribes a finding of disabled for an individual who is "closely approaching advanced age" and who has a high school education, if their "skilled or semi-skilled skills are not transferable."

*See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.*   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.   *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to apply the correct legal standards is grounds for reversal.   *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III.   Discussion

Mr. Recla alleges that the ALJ's adverse decision regarding the time period from January 2011 until June 2012 should be reversed and remanded because, he asserts, the ALJ: (1) failed to give proper weight to the opinion of a treating physician, Dr. Odeane Connor; (2) failed to give proper weight to the examining psychologists, Dr. David Wilson and Dr. Robert Storjohann, and examining physicians, Dr. Daniel Prince, Dr. Jane Teschner, and Dr. Anthony Fava; and (3) improperly gave more weight to non-examining physician Dr. Carol Porch and non-examining psychologist Dr. Steven Dobbs.   (Doc. 12, p. 3).   The Commissioner asserts that the ALJ properly evaluated the medical evidence and gave specific reasons for the weights assigned to each.   (Doc. 15, pp. 9-12).

### A.   Treating Physician's Assessment

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997) (internal quotations omitted).   The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how

consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  "Good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [it]... was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

The claimant asserts that the ALJ failed to give proper weight to the opinion of his treating physician, Dr. Connor.  Dr. Connor treated the plaintiff for many years at a pain clinic, where he went on a monthly basis to get refills for narcotic pain medication.  As discussed *supra*, the decision that Mr. Recla was not disabled before January 11, 2011, is not at issue here; the issue here is whether he was disabled after that date and before June 12, 2012.  On March 15, 2011, Dr. Connor completed a Clinical Assessment of Pain for the claimant, in which she reported that his pain existed to such an extent that it would be "distracting to adequate performance of daily activities or work."  (Tr. at 1201).  She further opined that side effects from claimant's pain medication would be expected to "limit the

effectiveness of work duties." (*Id.*) The combination of pain and side effects of medication would be "severe" and would result in "distraction, inattention, and drowsiness." (Tr. at 1202).

These assessments, however, are inconsistent with her treatment notes. Almost immediately after January 11, 2011, Dr. Connor treated Mr. Recla on January 18, 2011, when she noted that his backache was "moderate," with a pain level of 5 on a scale of 1 to 10. (Tr. at 693). She further noted that his medication did not produce adverse effects and was "fair[ly]" effective at managing the pain. (*Id.* at 693-94). On February 9, 2011, she recorded that his pain level was a level 8 without medication but 5 with medication; that he reported no adverse effects from the medication, and that no changes were needed. (Tr. at 691-92). In two visits in March 2011, the month in which she completed the Clinical Assessment of Pain, Dr. Connor recorded that Mr. Recla reported his pain level as 9 without medication but 4 with medication. (Tr. at 687, 689). During multiple visits throughout 2011, Dr. Connor reported the claimant's pain to be 7 or 8 on a scale of 10, but noted that his medication was effective, that he had "moderate" limitation of range of motion, and that he has "4/5" strength in all four extremities. (Tr. at 1278-1299).

The ALJ noted that the report of pain in Dr. Connor's records was inconsistent with the report of Dr. Towles-Moore, another of plaintiff's treating physicians.

Claimant began seeing Dr. Towles-Moore in October 2011, who found that the claimant had some back tenderness, but he was alert, oriented, and displayed no unusual anxiety.   Also, she reported that he had "normal range of motion, muscle strength and mobility" with "no pain on inspection" as late as April 2013.   (Tr. at 1489).

Moreover, the ALJ explained her rationale for giving "some weight" to Dr. Connor's pain assessment, finding it only "partially consistent with the evidence of record."   The ALJ stated:

> The record reflects that the claimant's pain fluctuated and that he had experienced mild, moderate, and severe pain during the year prior to the pain assessment was prepared [sic].   Nonetheless, the level 3-5 pain reported with use of medication does show that the claimant may not be able to do heavier tasks, but it does not in and of itself preclude sedentary activity.   The claimant continues to perform some daily activity that shows ability to deal with pain.   Additionally, the records from the pain clinic indicate that the claimant's treatment was effective in treating his pain.   Further, Dr. O'Connor's [sic] opinion does not sufficiently show that the claimant has the quality of side effects the doctor suggested.   Her assessment of side effects is not convincing. While the claimant may well have had some side effects producing some drowsiness, the record also shows that he was able to engage in many daily activities such as driving and reading without undue impact.   In so concluding, I have considered later evidence to be discussed below, where the claimant was noted to be slowed by his medication, but not unable to function while on it.

(Tr. at 23).   The ALJ gave Dr. Connor's assessment some weight, based upon her determination that the physician's statement regarding disability was inconsistent with her treatment records, which showed that Mr. Recla's pain was fairly well controlled by medication, and with the claimant's own testimony about his activities and abilities.[3]   Both claimant and his wife reported that he could lift ten pounds, did some household chores, and "puttered" in the garage.   The claimant acknowledged that he drove on occasion and went shopping in store.

Even the opinion of a treating physician can be disregarded where "good cause" is shown. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997).   The ALJ's decision demonstrates "good cause" to accord Dr. Connor's opinion less than "substantial weight," and the ALJ articulated specific reasons for giving less than controlling weight to the opinion of the treating physician.   Accordingly, the ALJ did not commit reversible error.

### B.   Examining Physicians' Assessments

Different types of medical sources are entitled to differing weights.   The opinion of a treating physician, as discussed above, usually is entitled to the greatest

---

[3]      It should be noted that Dr. Connor was not the only treating physician whose opinions were available to the court.   The ALJ gave "great weight" to the opinion of a treating psychiatrist,   Dr. Maurice Jeter and also gave some weight to the findings of Dr. Towles Moore. (Tr. at 36).

weight.   A non-treating physician or psychologist, who has examined the patient but does not treat the patient on a regular basis, is entitled to less weight.   The least weight is given to a non-examining medical source, who may provide an opinion based upon a review of the written record but who has not examined the patient.   20 C.F.R.   § 404.1502.   Even so, any medical source's opinion can be rejected where the evidence supports a contrary conclusion.   *See, e.g., McCloud v. Barnhart*, 166 Fed. Appx. 410, 418-19 (11th Cir. 2008).   The weight to be afforded any medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.   *See* 20 C.F.R.   §§ 404.1527(d), 416.927(d).

At issue in this case are the opinions of two psychologists and three physicians, each of whom examined the plaintiff on one occasion for purposes related to his application for disability benefits.   None of these doctors had an ongoing relationship with Mr. Recla, and none treated him.   The psychologists based many of their conclusions on the plaintiff's self-reported descriptions of his condition.   Their opinions are entitled to weight only to the extent that they are bolstered by the evidence, are not contrary to other medical evidence, and do not

contradict the opinions of treating physicians.   The opinions need not be considered to the extent that they are conclusory or internally inconsistent.

The claimant asserts that the ALJ failed to give proper weight to the opinions of examining psychologists David Wilson and Robert Storjohann, and examining physicians Daniel Prince, Jane Teschner, and Anthony Fava.   The court will examine each doctor in turn.

Dr. Wilson performed a psychological evaluation on Mr. Recla on April 6, 2011. Dr. Wilson diagnosed the plaintiff with major depression, estimated low average intelligence, and chronic pain.   He assigned a GAF of 45 to Mr. Recla, and opined that "[h]is pain and the related sedation due to his medication would also cause serious problems in a work setting" and that he "does not appear to be capable of working because of all these problems."   Mr. Recla told Dr. Wilson, however, that the medications help with the pain, and that the pain level will go from an 8 or 9 without medication to a 2 or 3 with it.   (Tr. at 1203-04).   Mr. Recla was referred to Dr. Wilson by his attorney.   (Tr. at 1203).    He arrived at the appointment on time, having driven himself.   He spent much of the appointment kneeling on the floor, complaining of pain, and said that he often falls asleep into his food at mealtime because his medications cause such severe sedation.   (Tr. at 1205).

Just a month after his examination by Dr. Wilson, the plaintiff had a psychological examination by Dr. Robert Storjohann, who was selected by the Commissioner.   Dr. Storjohann's report was based solely on the patient's self-reported symptoms.   Mr. Recla reported that he had suffered from depression and anxiety "as long as [he] could recall," that he had recurrent manic episodes since the age of 18, had panic attacks, anger management issues, and post-traumatic stress disorder ("PTSD") that was related to sexual abuse he suffered as a child.   He further reported that the medications he took caused him to be "somewhat calmer, somewhat less anxious, and somewhat less depressed," and that they improved his sleep pattern.   (Tr. at 763).   The doctor reported a diagnostic impression of bipolar disorder, PTSD, and anxiety disorder.   (Tr. at 765).   Dr. Storjohann also determined that Mr. Recla "appears to have moderate to marked deficits in his ability to understand, carry out and remember instructions in a work setting," and "marked to extreme deficits in his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting."   (*Id*.)

The ALJ stated that she considered and gave "little weight" to Dr. Wilson's opinion because it was inconsistent with the "credible medical and objective evidence" of record.   (Tr. at 24).   The ALJ noted that a GAF exam performed later, in 2012, resulted in a significantly higher score of 60.  (Tr. at 36).   She

compared Dr. Wilson's report to one from a psychological expert, Dr. Summerlin, who filed a report in connection with Mr. Recla's earlier application for Social Security benefits, and found them to be "quite the opposite." (Tr. at 24). Dr. Summerlin, the ALJ stated, opined in 2009 that the claimant was "malingering and overly dramatic." (*Id.*) Dr. Summerlin's assessment, and the claimant's own report about his daily activities--which include mowing the lawn with a self-propelled mower, helping with laundry and dishes, reading, driving, and shopping--convinced the ALJ that "Dr. Wilson's assessment is overstated." (Tr. at 24).

As for Dr. Storjohann's report, the ALJ found it to be "not consistent with the record as a whole." (Tr. at 26). She further found that the plaintiff's self-described severe symptoms of mental disorders were "not well documented" and "entirely inconsistent" with the plaintiff's work history, leisure activities, and the report from a friend who described him as easy-going and amiable. (Tr. at 27).[4]

In sum, the ALJ considered the reports of Drs. Wilson and Storjohann, and accorded them little weight because they were inconsistent with the claimant's medical records, the reports of treating physicians, and with the claimant's own

---

[4]     Mr. Recla had never reported such manic episodes to his long-time treating physician, and had never received any documented treatment for PTSD or bipolar disorder.

testimony.   The ALJ clearly articulated "good cause" for the limited weight she gave to the opinions, and therefore the determination was based upon substantial evidence and was in accordance with the governing law.

The claimant further asserts that the ALJ erred in assigning little weight to the reports of Drs. Jane Teschner,[5] Daniel Prince, and Anthony Fava.   Each of these physicians performed independent physical evaluations at the request of plaintiff's counsel.   The opinion of each is considered in turn.

Dr. Teschner examined the plaintiff once, apparently in August of 2011.[6] (Tr. at 1210-16).   Dr. Teschner opined that Mr. Recla had a "moderately severe" impairment from lower back pain and "serious" depression and anxiety, which would persist for 12 months or longer.   (Tr. at 1215).   The ALJ gave little weight to the consultative opinion, and stated in some detail why Dr. Teschner's opinion was inconsistent with the treatment notes of Dr. Towles-Moore, a treating physician, and with Dr. Teschner's own observations.   (Tr. at 31-35).   In her own notes, Dr. Teschner reported "no loss of ROM [Range of Motion]" on examination of the

---

[5]        Plaintiff's counsel argues that the ALJ did not assign a weight to Dr. Teschner's opinion, but the ALJ specifically said she gave "little weight to Dr. Teschner's physical assessment" because it was inconsistent with the credible medical and objective evidence, and because her findings were "not consistent with her examination findings;" she further specified that Dr. Teschner's report is "generally viewed as unreliable."    (Tr. at 35).

[6]        The signature on the report, however, is inexplicably dated April 7, 2011.

claimant's back.   This is consistently confirmed by her ROM tables, showing only slight limitations on range of motion.   (Tr. at 1213-1214).   The ALJ correctly noted that Dr. Teschner's comments were inconsistent with her own observations.

Dr. Prince examined the plaintiff in January of 2012.   He opined that Mr. Recla was disabled from work because of "fibromyalgia and chronic pain disorder, and chronic mental nervous disorder, unspecified."   (Tr. at 1218-20).   The ALJ discussed Dr. Prince's report in great detail, according "some weight" to the final diagnosis.   (Tr. at 32).   However, the ALJ specifically noted that Dr. Prince stated that he had reviewed the medical records and that the objective reports did not show any orthopaedic injury that would account for the extreme and widespread pain complained of by Mr. Recla.   (*Id.*)   The ALJ further noted that the basis of the plaintiff's argument, that Mr. Recla's spinal injury meets Listing 1.01, is refuted by Dr. Prince in that the "first step in disability analysis is to show whether the claimant has a medically determinable condition that could produce the pain and other symptoms alleged."   (*Id.*)   The ALJ accorded "little weight" to Dr. Prince's "conclusory" physical assessment, finding, *inter alia*, that Dr. Prince's opinion that claimant "can never use his hands for grasping, fine manipulation or fingering/feeling" was inconsistent with other doctor's reports, with the claimant's

own testimony, and with claimant's wife's reports of Mr. Recla's daily activities. (Tr. at 33).

Dr. Fava examined Mr. Recla on May 19, 2011.   (Tr. at 747-51).   On the one hand, Dr. Fava noted a normal range of motion in the upper and lower extremities, and neurological findings of a strong grip and intact fine and gross manipulation. On the other hand, he opined that the claimant was "unable to stand, walk, lift, carry, handle objects weighing over one pound, or travel."  (Tr. at 749).   The ALJ gave Dr. Fava's assessment of Mr. Recla's ability to do work-related activities little weight because they were "not consistent with the medical and objective evidence."   (Tr. at 25).   The ALJ pointed out that the opinion was not consistent with Dr. Fava's own recorded clinical observations, and that it was contradicted by the plaintiff's own testimony in April 2011 that he could lift 10 to 15 pounds.   (*Id.*)

The ALJ articulated specific reasons for giving little weight to the assessments of these examining physicians, and the assessments generally do not comport with the clinical findings of treating physicians, with the plaintiff's own assessment of his daily activities, or with reports from the plaintiff's wife and long-time friend.   Accordingly, the ALJ's determination is based on substantial evidence and adheres to the appropriate legal standards.

### C.   Non-Examining Physicians' Assessments

While it is true that a non-examining physician's opinion is generally entitled to less weight than the opinions of treating or examining physicians, the opinion of a non-examining physician still may be relied upon when it is supported by other medical evidence and when it comports with the evidence viewed as a whole.   *See Edwards v. Sullivan*, 937 F.2d 580, 585 (11th Cir. 1991) .   It is well settled that the ALJ may assign minimal weight to any opinions that are not supported by the evidence.   *See Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

The plaintiff asserts that the ALJ erred in assigning more weight to the non-examining physician, Dr. Carol Porch, and to the non-examining psychologist, Dr. Steven Dobbs, than to the examining physicians.   The Commissioner's brief does not specifically address the weight given to these assessments.   The court examines these two opinions in turn.

Dr. Porch completed a physical residual functional capacity ("RFC") assessment on Mr. Recla in June of 2011, after a review of the medical evidence, including the reports from Drs. Connor and Fava.   She opined that the claimant was able to perform sedentary work with certain restrictions.   The ALJ gave "significant weight" to the opinion of Dr. Porch, after she made an exhaustive review of all of the relevant evidence.   (Tr. at 41).

Dr. Dobbs completed a Psychiatric Review Technique form in July of 2011, finding that Mr. Recla had a mild restriction in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation that were of extended duration.   (Tr. at 781-83).   The ALJ gave Dr. Dobb's assessment "substantial weight," noting that it was "generally consistent with credible evidence of record."   (Tr. at 28).

The ALJ prepared a lengthy decision that reviewed in great detail the medical records, the opinion evidence, the testimony from two hearings, and the statements of Mr. Recla's wife and his friend.   The decision points out numerous inconsistencies in what Mr. Recla reported to doctors and what Mr. Recla testified that he was able to do.   The ALJ gave little weight to medical sources only after determining that the opinions given were not supported by the objective medical evidence, by the doctor's own notations, by the claimant himself, or by other credible evidence.   Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions,... but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."   *Dyer v. Barnhart*, 395 F.3d

1206, 1210 (11th Cir. 2005).   The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440.

In this case, the ALJ inspected all of the doctors' evaluations, weighed the credibility of the claimant, described the inconsistencies and lack of support for certain conclusions, and ultimately found that, during the relevant time, the claimant was not disabled.   The ALJ's determination regarding Mr. Recla is supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings.

### IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. Recla's arguments, the Commissioner's decision is due to be AFFIRMED and the action is due to be DISMISSED WITH PREJUDICE.   The court will enter a separate order.

DATED the 22nd day of August, 2016.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE